**In the Matter of: AN INVESTIGATION OF UNFAIR ELECTION PRACTICE OBJECTIONS.**

**Rosemount Education Association, Burnsville, Minnesota,**

**and**

**Rosemount Federation of Teachers, Apple Valley, Minnesota,**

**and**

**Independent School District No. 196, Rosemount, Minnesota.**

No. C9–89–1420.

Court of Appeals of Minnesota.

Jan. 30, 1990.
Review Granted March 22, 1990.

Eric R. Miller, Donald W. Selzer, Jr., Byron T. Jones, Jonathon H. Bloomberg, St. Paul, for Relator Rosemount Educ. Ass'n.

Roger A. Peterson, Minneapolis, for respondent Rosemount Federation of Teachers.

Hubert H. Humphrey, III, Atty. Gen., Andrea Mitau Kircher, Sp. Asst. Atty. Gen., St. Paul, for respondent Paul W. Goldberg.

Heard, considered and decided by FORSBERG, P.J., and NORTON and BOWEN *, JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

NORTON, Judge.

Rosemount Education Association ("REA"), a public school teachers' representation organization, obtained a writ of certiorari seeking review of ruling, by Commissioner of Bureau of Mediation Services, that voided a representation election which REA won by one vote. Rival association, Rosemount Federation of Teachers ("RFT"), filed notice of review regarding post-election objections rejected by the Commissioner.

## FACTS

RFT was the certified representative of the teachers of Independent School District 196 ("District"). Representation of school teachers is governed by the Public Employment Labor Relations Act ("PELRA"), Minn.Stat. ch. 179A (1988). To challenge RFT as exclusive representative of the District's teachers, REA prepared an appropriate petition. The petition was presented to respondent Commissioner Goldberg ("Commissioner") of the Bureau of Mediation Services ("Bureau"), responsible for administering elections under PELRA. The Commissioner began preparing for a representation election.

The Commissioner ordered the District to provide a list of employees eligible to vote. The parties were ordered to review the list and notify the Bureau of any discrepancies. Neither REA nor RFT made any corrections and both approved the list.

The Bureau issued a Mail Ballot Election Order. RFT inquired about an on-site election, but a Bureau employee discouraged it because mail ballot elections are more easily and quickly conducted. RFT was informed that it could request the Commissioner conduct an on-site election, but RFT made no request. Ballots were mailed to voters on April 4, 1989 with instructions that they be returned in the enclosed envelope no later than April 20, 1989 for tabulation on April 21, 1989.

Of 1124 ballots mailed, four were subsequently discovered to be ineligible, but were not returned. Therefore, 1120 eligible voters received ballots. RFT informed voters in writing that they should immediately contact their RFT building steward for replacement ballots, if necessary. Several teachers did so. Their inquiries were funneled through RFT channels to its president, who requested replacements from the Bureau on April 12, April 13 and April 18, 1989.

At the cutoff time, 879 eligible ballots had been received; 440 voted for REA, 439 voted for RFT. RFT immediately wrote the Commissioner a letter of 'protest' and 'objection' citing procedural irregularities and requesting an investigation and a new election. On April 24, the Commissioner issued an order characterizing the RFT's objection as in accordance with Minn.Rules 5510.2110, "Unfair Election Practices." The Commissioner decided to investigate because of the one-vote margin, and ordered RFT to specify particular objections.

RFT specified nine objections within four general categories: 1) inaccuracy of the voter eligibility list, 2) irregularities in posting election notices, 3) lack of authority to conduct elections by mail, and 4) lack of a 'no representation' choice on the ballot. The Commissioner first investigated RFT's claim that two teachers were improperly listed as eligible voters. One returned his ballot, which was counted. Because of the one-vote margin, the Commissioner decided that if he found this voter ineligible, he would schedule a second election, but that if he found this voter eligible, he would schedule a full hearing to investigate the remaining objections.

REA objected to RFT's objections and requested certification during the investigation. The Commissioner eventually ruled that the voter in question was eligible, but refused to certify REA as the representative. The Commissioner alleged that he had authority to investigate and hold hearings, if *any* question of representation exists, under Minn.Stat. § 179A.12, subd. 5.

RFT then raised additional objections based on the ruling that the voter in question was eligible. RFT asserted that five similarly situated teachers were not includ-

ed on the eligibility list. REA objected to the submission of untimely additional objections, but the Commissioner ordered that all objections be considered together in hearings already scheduled.

After the hearings, the Commissioner rejected all of RFT's objections and found that no party was necessarily prejudiced. The Commissioner held, however, that because the Bureau's instructions were inadequate, the employees may not have freely chosen their representative. The Commissioner asserted an independent jurisdiction to void election results, voided the election and ordered a new on-site election.

## ISSUES

1. Did the Commissioner err in voiding the April election?

2. Did the Commissioner err in rejecting the four RFT post-election objections?

## ANALYSIS

### Jurisdiction and Standard of Review

■ The Minnesota Administrative Procedures Act ("APA") governs judicial review of the Bureau's decisions:

* * * the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions, or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1988). Decisions of administrative agencies will be reversed when they reflect an error of law, are arbitrary and capricious or are unsupported by substantial evidence. *Crookston Cattle Co. v.*

*Minnesota Department of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980). Substantial evidence is:

1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than "some evidence"; 4) more than "any evidence"; and 5) evidence considered in its entirety.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977). The reviewing court may evaluate the evidence and consider the entire record. *Id.*

■ This court is not bound by the agency's statutory interpretation. *Arvig Telephone Co. v. Northwestern Bell Telephone Co.,* 270 N.W.2d 111, 114 (Minn.1978). The agency's decision is entitled to deference "where 1) the statutory language is technical in nature, and 2) the agency's interpretation is one of longstanding application." *Id.* Quasi-judicial decisions are more closely scrutinized than quasi-legislative decisions. *Id.* at 116. The statutes involved in this case are not technical, and the interpretations at issue are not of longstanding application. Therefore, we examine the plain language of the statutes involved.

## I.

### Elections under PELRA

The Commissioner's duties in certification of this election are governed by Minn. Stat. § 179A.12 (1988). REA petitioned for a representation election. Minn.Stat. § 179A.12, subd. 3. Upon receipt of a petition, the Commissioner must investigate whether a representation question exists and may hold hearings necessary to determine the representation rights of employees. Minn.Stat. § 179A.12, subd. 5.

The Commissioner then issues an order providing for a secret ballot election which:

shall be held in the premises where those voting are employed *unless* the commissioner determines that the election cannot be fairly held, in which case it shall be held at a place determined by the commissioner.

Minn.Stat. § 179A.12, subd. 7 (emphasis added). A Mail Ballot Election Order was

issued; the statute clearly requires that the election be held in the employee premises or another place.

When a representative prevails in an election, it shall be certified as the exclusive representative of the teachers. Minn. Stat. § 179A.12, subd. 10. The Commissioner is then barred from reconsidering the matter. Minn.Stat. § 179A.12, subd. 12. When tabulation revealed a one-vote margin, the Commissioner refused to certify REA.

The Commissioner relies on his investigatory powers as authority to void this election. The Commissioner has the power to investigate *upon receipt* of an organization's petition and to then hold hearings to determine representation rights. Minn. Stat. § 179A.12, subd. 5. However, the only power to void an election occurs if an employer, candidate or employee commits an unfair labor practice which affects the result of an election. *See* Minn.Stat. § 179A.12, subd. 11.

The relevant rules also permit voiding election results in one event. Minn.Rules 5510.2110, subpt. 3 states in pertinent part if "an unfair election practice is established, the election may be voided and a new election may be ordered." To be given effect, this rule must be consistent with the relevant statute. *See McKee v. County of Ramsey,* 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976). An "unfair labor practice" is the only circumstance in which the statute empowers the Commissioner to void an election.

Thus, the Commissioner's investigatory powers appear not to include the power to void elections. Minn.Stat. § 179A.12, subd. 5 regards receipt of an organization's petition. Had the legislature intended this subdivision to also empower the Commissioner to void election results, it would have said so, as it did in regard to unfair labor practices, Minn.Stat. § 179A.12, subd. 11.

The statute as a whole reveals a chronological pattern: petition for certification, election order, ballots and election, certification (or, in the event of an unfair labor practice, voiding and order for new elec-

tion), and the bar to reconsideration after the winner is certified. The statute contains no authority for the proposition that the Commissioner has the power to void the results of this election.

The Commissioner also invokes the public policy statement of Minn.Stat. § 179A.01. This affirmation of public employees' rights to bargain does not empower the Commissioner to void election results. He argues that, because the purpose of PELRA is to determine which bargaining unit represents the majority, he has the authority to remedy flawed elections. The Commissioner felt the will of the majority may not have prevailed and decided to void the election. This section does not give the Commissioner that authority.

■ The Commissioner and RFT attempt to demonstrate authority to utilize any method to determine the representative by analogy to Minn.Stat. § 179.16. This statute is irrelevant; the Minnesota Labor Relations Act does not apply to public employees. The statute cited has no parallel in PELRA.

■ The Commissioner's statutory analysis is incorrect and the authority asserted is not persuasive. An agency has no power to act in conflict with the authority granted to it by the legislature. *Waller v. Powers Department Store,* 343 N.W.2d 655, 657 (Minn.1984). The Commissioner was required to certify the winner of the April election and to then be barred from reconsidering the matter. Minn.Stat. § 179A.12, subd. 10, subd. 12. We hold that the Commissioner erred in failing to certify the REA and was without authority to void this election and order another.

*Other Elections*

The Commissioner refers us to two earlier elections in which the Bureau voided the initial result. Both are inapposite. The first voided an election because the Bureau failed to *adhere* to its own procedures. That 1979 ruling also involved a different statute from that involved here. A 1984 ruling entitled "Determination of Unfair

Election Charges" voided an election because the Bureau again failed to *adhere* to its procedures, which may have caused a *party* to commit unfair labor practices. *See* Minn.Stat. § 179A.13. Neither ruling was the subject of judicial review.

The Commissioner also offers two decisions of the National Labor Relations Board which overturned the results of elections. Those decisions, which have no application here, also involved failure to *adhere* to procedures or law. In contrast, this case involves the Commissioner's spontaneous post-hoc decision that the procedures themselves were inadequate.

An unfair labor practice creates the only circumstance in which the Commissioner may void an election result. Minn.Stat. § 179A.12, subd. 11. Because the legislature expressly granted that authority in only this circumstance, we must conclude the authority is not intended to apply to other situations, when it is not expressly granted. Minn.Stat. § 645.19 (1988). The Commissioner's decision to change the procedures after the election is also arbitrary and capricious in light of his ruling that no party was necessarily prejudiced.

*Substantial Evidence*

■ The Commissioner's decisions must be based upon the record. The Commissioner's ruling on objections to election states:

> Here there are at least four eligible voters who testified they never received a ballot; and who, *even if they had read* the election order, would not have known how to obtain a ballot.

(Emphasis added).

Two teachers testified they did not *read* postings. One testified he thought he was not eligible to vote. Another did not use the enclosed return envelope despite clear instructions that ballots could not be tabulated unless returned in this envelope.

One teacher was "not fully aware that the election was being held through the mail." Another made daily requests of her RFT building steward to obtain a replacement ballot, but RFT requested replacements too late. Several teachers knew they generally had mail delivery problems

or had not provided the District their current addresses. The Commissioner knew that teachers did not read the posted orders. This fact does not constitute substantial evidence that improved instructions in the Mail Ballot Election Order would have had an impact on the participation of these teachers. To the contrary, many teachers did obtain and return replacement ballots, which demonstrates that those who chose to participate in the election were generally able to do so.

The Commissioner must rely on substantial evidence in the record to support his ruling. The evidence here does not support the Commissioner's decision.

## II.

RFT's notice of review raises four issues generally challenged by its post-election objections: inaccuracy of the voter eligibility list, irregularities in posting election notices, lack of authority to conduct mail ballot elections, and failure to include 'no representation' on the ballot.

*Accuracy of Voter Eligibility List*

■ RFT had ample opportunity to inspect and correct the list, then agreed to the list and signed a statement to that effect. The Commissioner correctly held that any inaccuracy was not a sufficient ground upon which to order a new election because all the parties made a good faith effort to be accurate, there were no blatant errors and no objections were made during the objection period. The record supports the Commissioner's ruling. Several teachers knew their addresses listed with the District were inaccurate. RFT had building stewards in each building and could easily have ascertained accuracy. It chose not to do. The Commissioner's ruling is affirmed.

*Posting of Notices and Orders*

■ The Commissioner rejected RFT's objection to "irregularities in posting election notices." These documents were all handled in the customary manner and posted in well known areas. Several witnesses testified they did not read postings. There

is no evidence that any eligible voter did not vote because of posting irregularities. The Commissioner's decision rejecting this objection is affirmed.

*Mail Ballot Election*

 Although RFT was aware as early as February 14, 1989, that the election would be conducted by mail ballot and participated in compilation of the home mailing address list, no objection was raised until after the tabulation of votes. RFT waived its right to object. *See Albrecht v. Sell,* 260 Minn. 566, 569–70, 110 N.W.2d 895, 897–98 (1961). The Commissioner's decision to reject this objection is affirmed.

However, the Bureau makes it a practice to conduct elections by mail. Elections clearly must be held at a place. Minn.Stat. § 179A.12, subd. 7. The statute does not permit mail balloting. Only the Bureau's rules indicate that an election may be held by mail. Minn.Rules 5510.-2010, subpt. 2.

The Commissioner's statutory interpretation would permit mail ballot elections. We disagree. The authority to conduct mail ballot elections, a practice which conflicts with the statute, can be created only by the legislature. The Commissioner and Bureau are without authority to conduct mail ballot elections.

*'No Representation' Choice*

There are three types of elections: certification, representation, and decertification. This election was a representation election. *See* Minn.Stat. § 179A.12, subd. 3.

A representation election is obtained upon petition stating that the current representative no longer represents the majority and that at least 30 percent of the employees wish to instead be represented by the petitioner. *Id.* In certification and decertification elections, however, the contest regards whether to have representation. In a representation election, the contest is among representatives. The ballots indicate the appropriate candidates. A representation election ballot shall also contain 'no representation' if the required showing of interest in that option has been sub-

mitted. Minn.Rule 5510.2010, subpt. 7B. Here, no petition indicating that 30 percent or more of employees preferred 'no representation' was submitted.

The statute is unambiguous in defining a representation election. Ballots need contain a 'no representation' choice only when 'no representation' is a 'candidate.' RFT had seen and approved the ballot prior to the election and waived its right to object. The Commissioner's ruling on this objection is affirmed.

### DECISION

The Commissioner was without authority to void the April 1989 election, refuse to certify REA and then reconsider the matter and order a replacement election. The Commissioner is hereby ordered to certify the REA, winner of the election, as exclusive representative of the unit. The Commissioner will perform any related acts necessary to effectuate this decision.

Reversed and remanded.